IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS LEE RUPERT,         : Civ. No. 1:24-CV-1930
                                     :
             Plaintiff        :
                                       :
    v.                           :
                                     : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,          :
Commissioner of Social Security,[1]  :
                                       :
         Defendant      :

## MEMORANDUM OPINION

### I. Introduction

Thomas Rupert filed a Title II application for a period of disability and disability insurance benefits on August 24, 2022. (Tr. 17). Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Rupert was not disabled from his alleged onset date of disability of August 10, 2022, through June 14, 2024, the date of the ALJ's decision. (Tr. 32).

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

Rupert now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

On August 24, 2022, Rupert applied for disability insurance benefits, citing an array of physical and mental impairments, including fibromyalgia, autism, depressive disorder, Asperger's syndrome, and obesity. (Tr. 20, 232). Rupert was 26 years old at the time of the alleged onset of disability, had at least a high school education, and had past employment as a factory laborer, a restaurant employee, and a mechanic. (Tr. 30, 233).

With respect to Rupert's alleged physical impairments,[2] the record revealed the following: The earliest pertinent records are from Phoenix Physical Therapy, where Rupert received treatment for lower back pain and cervicalgia from December 2022 through March 2023. (Tr. 578-635). In March, Rupert reported pain in his spine, numbness and tingling in his arms, and occasional numbness in his legs to Certified Physician Assistant ("PA-C") Daniel Longacre. (Tr. 443-44). Longacre noted that Rupert had exaggerated reflexes and ordered testing for myelopathy, cubital tunnel syndrome, and carpal tunnel syndrome. (Tr. 444). Longacre also recommended Rupert get a cervical spine MRI, and Rupert expressed interest in getting a lumbar and thoracic spine MRI as well. (*Id.*).

Also in March of 2023, Rupert consulted PA-C Ashley Wheeland at Geisinger Orthopedics Woodbine. (Tr. 469). Rupert again reported numbness in his arms, as well as spasticity and loss of control in his

---

[2] Because Rupert's appeal focuses on the ALJ's treatment of evidence related to his physical impairments, we will forego discussion and analysis of the mental health records and the corresponding portions of the ALJ's decision.

hands. (*Id.*). Wheeland suggested Rupert follow up with a neurologist. (Tr. 472).

In April of 2023, Rupert received MRIs of his lumbar, thoracic, and cervical spines. (Tr. 850). The MRIs did not show any disc herniation or stenosis, but they did reveal three small disc protrusions, one mild bulging disc, and Schmorl's nodes in Rupert's thoracic spine. (Tr. 550). Dr. Chulhyun Ahn assessed that none of those abnormalities required surgery, diagnosed chronic neck and back pain as well as numbness and tingling of the upper extremities, and recommended a posture correction brace along with continued use of wrist braces. (Tr. 547, 551).

Pursuant to his application for disability benefits, Rupert was evaluated by Certified Registered Nurse Practitioner ("CRNP") Kelly Shultz in May of 2023. (Tr. 515). She noted Rupert displayed 11 of 18 fibromyalgia "trigger points." (Tr. 521). In November of 2023, Rupert reported to Bloomsburg hospital's Acute Care Treatment Area complaining of right hip pain and right leg tingling and numbness, all of which had been going on for three or four days. (Tr. 693). He was diagnosed with lumbar radiculopathy. (Tr. 696).

4

In January of 2024, Rupert treated with a neurologist, Dr. Majeed Faraz. (Tr. 849). Dr. Faraz's tests all showed normal results, and he speculated that Rupert's issues could be related to nutritional deficiencies or could be functional neurological symptoms. (Tr. 849, 853). Rupert established care with Dr. Candace Miyaki of Geisinger Internal Medicine Department in February of 2024. (Tr. 910). Dr. Miyaki noted that Rupert had "generalized pain," which was previously diagnosed as fibromyalgia, as well as foot pain while driving, sitting, or laying down, and numbness in his hands. (Tr. 911).

It is against this factual backdrop that the ALJ conducted a hearing in Rupert's case on March 12, 2024. (Tr. 37-70). Rupert and a vocational expert ("VE") both testified at this hearing. (*Id.*). Rupert testified about his work history, his current limitations, and his fibromyalgia pain. (Tr. 44-59). The VE first classified Rupert's past work, then answered hypothetical questions about a claimant with Rupert's background and specific limitations. (Tr. 60-69).

Following this hearing, on June 14, 2024, the ALJ issued a decision denying Rupert's application for benefits. (Tr. 17-32). In that decision,

the ALJ first concluded that Rupert met the insured status requirement through December 31, 2027. (Tr. 19). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found Rupert suffered from the following severe impairments: fibromyalgia; autism; depressive disorder; and obesity. (Tr. 20). At Step 3 the ALJ determined that Rupert did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.*).

Between Steps 3 and 4 the ALJ concluded that Rupert retained the residual functional capacity to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except: He can perform jobs that would take no more than 30 days of training with a specific vocational preparation level of two (SVP 2), which are generally classified as unskilled. He can understand, remember, and carry out simple instructions. He can perform simple, routine, and repetitive tasks. He can perform jobs that would be considered "low stress" in that they would involve only occasional, simple decision making, and only occasional gradual changes in the work duties and work setting. He can have occasional interaction with co-workers and supervisors, and can perform jobs in which he would have no more than rare or incidental contact with members of the general public.

(Tr. 22).

6

In reaching this RFC determination, the ALJ made the following findings: the ALJ considered Rupert's reported, subjective symptoms, and found that his "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements (and his wife's statements) concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 23). The ALJ also found that Rupert's "statements about the intensity, persistence, and limiting effects of his symptoms" were inconsistent with his "routine and conservative course of treatment, the longitudinal objective mental status examination findings, the longitudinal physical examination findings, the diagnostic testing of record, the claimant's activities of daily living, the persuasive opinion evidence of record, and other evidence," and did "not support the level of limitation that is alleged." (Tr. 23-24). The ALJ then embarked on an extensive review of the medical record evidence he found supported that conclusion. (Tr. 23-28).

The ALJ next considered the medical opinions on record. The ALJ was not persuaded by the opinion of state agency medical consultant Dr. John Bertolino. (Tr. 28). Dr. Bertolino opined Rupert could lift 100 pounds occasionally and 50 pounds frequently, and could stand or walk for six hours out of an eight-hour workday. (*Id.*). The ALJ acknowledged Dr. Bertolino's opinion was supported by specific references to the medical record but found the opinion inconsistent with other portions thereof. (Tr. 28-29). Specifically, the ALJ noted that Rupert's obesity and CRNP Shultz's finding of tender points—an indicator of fibromyalgia—suggested Rupert was more limited than Dr. Bertolino opined. (Tr. 29).

CRNP Shultz's opinion was also found unpersuasive. (Tr. 29). Shultz opined in part that Rupert could stand or walk for only 30 minutes at a time, and for only four hours in an eight-hour workday. (*Id.*). The ALJ found that this opinion was both unsupported by, and inconsistent with, the medical evidence of record. (*Id.*). He found that the opinion was unsupported because Rupert's test results during Shultz's examinations were normal, and that the opinion was inconsistent with

the longitudinal evidence of record, diagnostic testing, and some of Rupert's activities of daily living. (*Id*.).

The ALJ then found at Step 4 that Rupert could not perform his past work but, at Step 5, found that he could perform other jobs that existed in significant numbers in the national economy, such as inspector and hand packager, small product assembler, and sub-assembler. (Tr. 31). Having reached these conclusions, the ALJ determined that Rupert had not met the demanding showing necessary to sustain this claim for benefits and denied the claim. (Tr. 32).

This appeal followed. (Doc. 1). On appeal, Rupert challenges the adequacy of the ALJ's decision, arguing it is not supported by substantial evidence. (Doc. 10 at 6-10). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be affirmed.

## III.   Discussion

### A.   Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-

9

maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime*

*Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a

11

claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).  Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.  *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements.  *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).  Ultimately, the ALJ's decision must be accompanied by "a clear

and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes him from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his past relevant work; and (5) is able to do any other work, considering his age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by

14

substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x

15

6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

16

Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

C. <u>Legal Benchmarks for the ALJ's Assessment of Medical Opinions</u>

The plaintiff filed this disability application in September of 2022, after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability

17

means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066.  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).  On the other

hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D.  This Case Will Be Affirmed.

Our review of the ALJ's decision denying an application for benefits is significantly deferential.  Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Biestek*, 139 S. Ct. at 1154.  Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

The Social Security Commissioner has published specific guidelines for an ALJ's treatment of fibromyalgia.  *See* SSR 12-2p, 2012 WL 3104869 (2012).  Because fibromyalgia presents inconsistently, certain changes in an ALJ's procedure are necessary when considering that condition.  *Id.* Courts have interpreted SSR 12-2p to mean an ALJ "may not discredit a claimant's subjective complaints regarding fibromyalgia symptoms based

on a lack of objective evidence substantiating them." *Arakas v. Comm'r of Soc. Sec.*, 983 F.3d 83, 97 (4th Cir. 2020) (noting that the Second, Sixth, Seventh, Eighth, and Ninth Circuit Courts of Appeal have made similar holdings). Courts enforcing that admonition have found error where an ALJ references normal physical examinations to discount a claimant's subjective complaints about fibromyalgia symptoms. *See e.g., Brunson v. Kijakazi*, Civ. No. 22-cv-3993, 2023 WL 5916461 at *14-15 (E.D. Pa. Sep. 11, 2023). ("[I]nsisting on confirmatory objective results—such as positive physical examination findings—within those records is improper [,]" and necessitates remand unless the error is shown to be harmless).

Rupert alleges the ALJ erred in his treatment of CRNP Shultz's opinion. We interpret Rupert's claim—that the ALJ substituted his own interpretation of the medical evidence for the medical provider's—as alleging a violation of 12-2p, as the ALJ arguably insisted on "confirmatory objective results" in his consideration of CRNP Shultz's opinion. (*See* Tr. 29). As discussed, the ALJ found Shultz's opinion was both unsupported by and inconsistent with the evidence of record. (*Id.*).

20

The ALJ found the opinion was not supported by Shultz's own objective physical examination findings, explaining that she "opined significant standing and walking limitations, but noted a normal gait, does not require a cane to ambulate, 5/5 strength, no sensory deficits, and physiologic and equal deep tendon reflexes." (*Id.*).  This language implies that a lack of abnormal results at this examination was sufficient to show Rupert's fibromyalgia is not as limiting as his reported symptoms and Shultz's opinion make it out to be.  (*Id.*).  This is the error that *Arakas* and *Brunson* warn against: "insisting on confirmatory objective results [.]" *Brunson*, 2023 WL 5916461 at *14.  We agree with the *Arakas* court and the many others that have held that it is error for an ALJ to rely on an absence of symptoms at a given examination to broadly discount a claimant's reported fibromyalgia symptoms.  Such reliance creates doubt that the ALJ considered that "symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p 2012 WL 3104869 at *6.  The ALJ's conclusion that Shultz's opinion is unsupported relies on this faulty logic.  However, while we

conclude this was error, a remand is not required because the error was harmless.

Social Security appeals are subject to harmless error analysis. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). Under the harmless error analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding . . ." *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

The error in finding this opinion unsupported is harmless because we conclude that the ALJ properly found Shultz's opinion inconsistent with the evidence. Inconsistency alone is sufficient for an ALJ to find a medical opinion unpersuasive. *See* 20 C.F.R § 404.1520c. The ALJ noted Shultz's opinion was inconsistent with "the record as a whole, including other opinion evidence [,] . . . the longitudinal physical examination findings, and the diagnostic testing." (Tr. 29). The ALJ also noted that certain limitations opined as necessary by Shultz were inconsistent with Rupert's activities of daily living, specifically, that he was moving furniture and cutting and loading firewood. (*Id.*). This is the sort of

22

evidence that 12-2p identifies as appropriate to discount fibromyalgia symptoms. *See* SSR 12-2p, 2012 WL 3104869 (2012) (explaining affirmative evidence is the proper way to discount fibromyalgia symptoms). Therefore, while the ALJ may have erred in finding Shultz's opinion unsupported, any error was harmless because the ALJ properly discounted Schultz's opinion based on its inconsistency, and different treatment of supportability would not have changed the result.

Finally, to the extent that Rupert asserts other arguments attacking the ALJ's decision, we conclude they are insufficiently developed.[3] Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case, and the decision will be affirmed.

---

[3] Rupert references an argument related to the ALJ's alleged failure to "properly consider [Rupert's] testimony [,]" but this notion is not developed in his brief in support past this conclusory statement, and Rupert chose not to file a reply brief in this matter. *See Markert v. PNC Financial Servs. Group, Inc.*, 828 F. Supp. 2d 765, 773 (E.D. Pa. 2011) (citation omitted) ("Throw-away arguments left undeveloped are [ ] considered waived.").

## IV.   Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: June 24, 2025